## APPEAL OF METROPOLITAN LAUNDRY CO.

Docket No. 538.    Submitted July 3, 1925.    Decided October 28, 1925.

1. Evidence *held* sufficient to establish value of good will paid in for capital stock.

2. A part of the taxpayer's capital assets was destroyed by fire in 1906. Thereafter, a part of the net earnings was applied against the capital deficit and a part distributed to stockholders, leaving a deficit in capital of $134,598.50 as of January 1, 1919. The dividends paid after such loss being in excess of such deficit, *held,* that, in computing invested capital for 1919, the paid-in capital should be reduced by the amount of the distributions to the extent of the deficit.

*Louis S. Beedy, Esq.*, and *D. A. Sargent, C. P. A.*, for the taxpayer.

*A. Calder Mackay, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency in income and profits taxes for the calendar year 1919 in the amount of $4,672.45. The deficiency is the result of elimination from invested capital of a certain item of $300,375, claimed as the value of good will paid in for stock in the month of November, 1903, at the time of the organization of the taxpayer.

There is also involved the deduction from invested capital of dividends paid while a deficit existed resulting from capital losses of prior years.

It appears that the computations were made by the Commissioner on the basis of affiliation of the taxpayer with another corporation, the affiliation not being in question.

### FINDINGS OF FACT.

1. The taxpayer is a Nevada corporation, with its principal place of business in San Francisco, Calif. It was organized in November, 1903, for the purpose of purchasing the plant and equipment of 11 laundries doing business in and about San Francisco and Oakland, Calif.

2. At the time of the purchase of such laundries, the taxpayer issued in payment for the tangible assets thereof 5,887 shares of its preferred capital stock having a par value of $100 per share. For the good will, consisting of established routes and lists of patrons, it issued 2,211 shares of its common stock of a par value of $221,100. Prior to January 1, 1919, part of the preferred capital stock had been retired. On January 1, 1919, and throughout the calendar year of 1919, the par value of the outstanding preferred stock amounted to $559,900. This amount, together with the $221,100 par value of common stock issued for good will, is the amount now claimed for invested capital by the taxpayer, of which amount $221,100 is in controversy. During 1919, taxpayer had outstanding $1,202,300 par value of stock, a portion of which was promotion stock. The same amount was outstanding on March 3, 1917.

All of the laundries purchased by the taxpayer had been in business from 10 to 40 years, and during this time had worked up and established routes and lists of patrons which were an important and essential part of the business. Some of the laundries had what is known as "inside" routes and others had "outside" routes. Others had both "inside" and "outside" routes. In 1903 "inside" routes had a value of approximately $15 per one-dollar's worth of weekly business and "outside" routes from $3 to $5 per one-dollar's worth of weekly business.

"Inside" routes are routes and lists of patrons owned directly by the laundry. The drivers collected and delivered the laundry on salary and commission. "Outside" routes were those owned by drivers who were not bound to have the laundry work done by any particular laundry. The amount of the weekly business of the

acquired laundries, and the value placed upon the good will of each laundry at the time of purchase, are as follows:

| Name | Weekly business | Appraised value of good will | Name | Weekly business | Appraised value of good will |
|---|---|---|---|---|---|
| Contra Costa | $4,000 | $66,000 | Pacific | $2,000 | $5,000 |
| Cascade | 2,000 | 80,000 | Troy | 1,500 | 5,000 |
| Eureka | 2,000 | 5,500 | Calif-French | 1,500 | 5,000 |
| United States | 4,000 | 57,300 | St. Nicholas | 1,500 | 7,500 |
| Yosemite | 2,000 | 6,800 | | | |
| Empire | 4,000 | 10,000 | Total | 28,500 | 221,100 |
| Electric | 4,000 | 23,000 | | | |

At the time of the purchase the value of the good will of the various laundries was appraised by experienced laundry experts, as above set forth, and common stock issued therefor, and the transaction duly entered upon the records of the taxpayer corporation. The good will of these laundries as purchased had a cash value equal to the stock issued therefor.

3. On or about the 18th day of April, 1906, all of the plants and equipment so purchased by the taxpayer and situated in San Francisco were destroyed by fire, including all the corporate and financial records of the taxpayer and the predecessor companies, with the exception of the minute book, stock journal, ledger, and stock certificate books of the taxpayer. The losses suffered by the taxpayer from the said fire, after crediting the collections and insurance money, amounted to $310,295.97 upon the plant, equipment, and machinery, and $32,459.57 upon accounts receivable. The taxpayer reestablished its plant and equipment and proceeded with the conduct of its business in San Francisco and Oakland, and up to the 31st day of December, 1918, had earned net profits amounting to $469,546.54, and during the calendar years 1913 to 1918, inclusive, it has paid to its preferred stockholders dividends amounting to $243,556.50. The net earnings and the dividends paid since the said fire in 1906 were as follows:

| Year. | Net earnings. | Losses. | Dividends paid. |
|---|---|---|---|
| 1906 | $9,444.61 | | (1) None. |
| 1907 | | $28,573.20 | None. |
| 1908 | 16,681.09 | | None. |
| 1909 | 34,463.04 | | None. |
| 1910 | 34,620.42 | | None. |
| 1911 | 50,920.80 | | None. |
| 1912 | 56,071.50 | | None. |
| 1913 | 53,729.57 | | $19,596.50 |
| 1914 | 51,922.24 | | 19,596.50 |
| 1915 | 73,548.39 | | 86,784.50 |
| 1916 | 33,598.13 | | 39,193.00 |
| 1917 | 46,215.26 | | 39,193.00 |
| 1918 | 36,904.69 | | 39,193.00 |
| Total | 498,119.74 | 28,573.20 | 243,556.50 |
| Losses | 28,573.20 | | |
| Total net earnings | 469,546.54 | | |

[1] None after the fire.

4. During the years 1906–1912, inclusive, the taxpayer did not pay any dividends but applied its net earnings on the capital losses sustained as a result of the fire in 1906. In the year 1913 and subsequent years, its books showed a surplus and it paid dividends. Upon an audit of the taxpayer's return for the year 1919, the Commissioner set up a reserve for depreciation sustained in prior years in the amount of over $200,000 and made other adjustments in the books of the taxpayer resulting in a deficit on January 1, 1919, of $134,598.80.

5. During 1919 the taxpayer paid dividends as follows:

| | |
|---|---|
| March 29 | $9, 798. 25 |
| June 28 | 9, 798. 25 |
| October 4 | 9, 798. 25 |
| December 20 | 9, 798. 25 |

Taxpayer had a net income of $60,991.60 during 1919.

6. The Commissioner computed taxpayer's invested capital as follows:

| | | |
|---|---|---|
| Preferred stock | | $559, 900. 00 |
| Deficit | $134, 598. 80 | |
| Adjustment of taxes | 1, 770. 13 | |
| Adjustment of dividends | 15, 193. 98 | 151, 562. 91 |
| Invested capital for 1919 | | 408, 337. 09 |

### DECISION.

The deficiency, if any, should be computed in accordance with the following opinion. Final determination will be settled on consent or on 15 days' notice, under Rule 50.

### OPINION.

PHILLIPS: There are but two issues in this appeal: (1) The value of the good will, if any, for which $221,100 par value of stock was issued by the taxpayer to its predecessor corporations; and (2) the proper construction of a deficit resulting from capital losses in prior years as affecting dividends paid in the year 1919 in computing invested capital.

The first issue is whether the good will for which the stock was issued had the actual cash value claimed by the taxpayer. Section 326 of the Revenue Act of 1918 provides:

(a) That as used in this title the term "invested capital" for any year means * * *:

(4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the *actual cash value of such property at the time paid in,* (b) the par value of the stock or shares issued therefor * * *.

92208—26——68

In our opinion there was presented abundant convincing proof that the good will at the time acquired had the actual cash value contended for by the taxpayer. It appeared that the laundries acquired had been established in business from 10 to 40 years and had acquired valuable routes and lists of customers and patrons without which laundry equipment would be of little value. Experienced and qualified laundry experts testified that the cash value of such routes is determined by the volume of weekly business derived therefrom and that in the year 1903 the value was approximately 15 times each dollar of weekly business for " inside " routes and from three to five times each dollar of weekly business for " outside " routes. It further appeared that prior to purchase of these laundries the values of the routes had been carefully appraised by laundry experts and that stock was actually issued upon these values. Applying the rates and methods of appraising such routes to the laundries in question, we find that this good will had at least the value claimed by the taxpayer. The stock issued for the good will was eliminated from invested capital by the Commissioner on account of lack of evidence and proof of actual cash value, but this evidence and proof has now been supplied.

As to the second issue, it appears that in the year 1906 the major portion of the capital assets was destroyed by fire. The taxpayer, however, rebuilt and immediately resumed business. Its net loss of capital assets, after deducting the amounts received from insurance and salvage, amounted to $310,295.97, a part of which was charged on its books against reserves for depreciation and bad debts which it had previously established. Between 1906 and 1913 taxpayer devoted its entire earnings to the replacement of these losses, declaring no dividends. After 1913 it paid dividends, its books at that time showing a surplus. Upon an audit of the returns the Commissioner found that sufficient depreciation had not been written off in prior years, and after making an adjustment in the books for such depreciation there resulted a deficit of $134,598.50. No objection has been made by the taxpayer to the depreciation adjustment and we must accept it as correct. The books of the taxpayer as thus adjusted by the Commissioner show an impairment of the original paid-in capital of $134,598.50 as of January 1, 1919. Since 1913 taxpayer has not sustained a net loss in any year, and since 1913 it has declared and paid dividends in excess of the amount of the deficit.

It is true, as the taxpayer contends, that the paid-in capital can not be reduced by subsequent capital losses, but the payments of dividends under the circumstances were, so far as the computation of invested capital is concerned, an impairment of the original capital by the distribution thereof among the stockholders. The deficit

created by the payment of dividends was properly deducted from the paid-in capital.

Dividends paid during 1919 to the extent to which they exceed current earnings are properly to be deducted from invested capital from the date of each payment, as such dividend payments represent a further impairment of the original paid-in capital.