*1065 OPINION.
Phillips:
There are but two issues in this appeal: (1) The value of the good will, if any, for which $221,100 par value of stock was issued by the taxpayer to its predecessor corporations; and (2) the proper construction óf a deficit resulting from capital losses in prior years as affecting dividends paid in the year 1919 in computing invested capital.
The first issue is whether the good will for which the stock was issued had the actual cash value claimed by the taxpayer. Section 326 of the Revenue Act of 1918 provides:
(a) That as used in this title the term “invested capital” for any year means * * *:
(4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid, in, (b) the par value of the stock or shares issued there-
*1066 In our opinion there was presented abundant convincing proof that the good will at the time acquired had the actual cash value contended for by the taxpayer. It appeared that the laundries acquired had been established in business from 10 to 40 years and had acquired valuable routes and lists of customers and patrons without which laundry equipment would be of little value. Experienced and qualified laundry experts testified that the cash value of such routes is determined by the volume of weekly business derived therefrom and that in the year 1903 the value was approximately 15 times each dollar of weekly business for “ inside ”• routes and from three to five times each dollar of weekly business for “ outside ” routes. It further appeared that prior to purchase of these laundries the values of the routes had been carefully appraised by laundry experts and that stock was actually issued upon these values. Applying the rates and methods of appraising such routes to the laundries in question, we find that this good will had at least the value claimed by the taxpayer. The stock issued for the good will was eliminated from invested capital by the Commissioner on account of lack of evidence and proof of actual cash value, but this evidence and proof has now been supplied.
As to the second issue, it appears that in the year 1906 the major portion of the capital assets was destroyed by fire. The taxpayer, however, rebuilt and immediately resumed business. Its net loss of capital assets, after deducting the amounts received from insurance and salvage, amounted to $310,295.91, a part of which was charged on its books against reserves for depreciation and bad debts which it had previously established. Between 1906 and 1913 taxpayer devoted its entire earnings to the replacement of these losses, declaring no dividends. After 1913 it paid dividends, its books at that time showing a surplus. Upon an audit of the returns the Commissioner found that sufficient depreciation had not been written off in prior years, and after making an adjustment in the books for such depreciation there resulted a deficit of $134,598.50. No objection has been made by the taxpayer to the depreciation adjustment and we must accept it as correct. The books of the taxpayer as thus adjusted by the Commissioner show an impairment of the original paid-in capital of $134,598.50 as of January 1, 1919. Since 1913 taxpayer has not sustained a net loss in any year, and since 1913 it has declared and paid dividends in excess of the amount of the deficit.
It is true, as the taxpayer contends, that the paid-in capital can not be reduced by subsequent capital losses, but the payments of dividends under the circumstances were, so far as the computation of invested capital is concerned, an impairment of the original capital by the distribution thereof among the stockholders. The deficit *1067 created by the payment of dividends was properly deducted from the; paid-in capital.
Dividends paid during 1919 to the extent to which they exceed current earnings are properly to be deducted from invested capital from the date of each payment, as such dividend payments represent a further impairment of the original paid-in capital.